241406, Centripetal Networks v. Keysight. Mr. Wall, nice to see you again. Judge Prost, good to see you too. May it please the Court. The Board began in the wrong place, so it ended in the wrong place. It began by construing a term packet flow entry that the parties were not disputing. Centripetal would have explained that based on the claim language, a packet flow is a single computing session between two endpoints or hosts, but a packet flow entry can be broader and can cover multiple flows. Question for you, Counsel. At the Board's hearing, Judge McNamara said the claim defines packet flow entry, and I'm quoting, there's an ellipsis there, as an entry that consolidates a plurality of packet log entries corresponding to a common thread identifier. How can you argue that packet flow was undefined or unconstrued if packet flow entry was defined? So, Judge Wall, it's really important to understand the way this proceeded. The parties in their briefs before the Board were disputing packet flow, and then in their reply, Keysight pointed to flow log entry, and we filed a SIR reply to address that. And the Board got that part right. It's at page 16 of the appendix, no, not flow log entry. Keysight's wrong about that. That's not part of the claims. At the hearing, you were right. At the hearing, the focus became on packet flow entry. But what the Board went on to do in its decision, that was not a subject of discussion at the hearing, was to focus on figure six, the threat dashboard, the user interface in the spec, and to say, ah, that's the packet flow entry, that's organized, this is the language you're reading, that's information that's organized with respect to a common thread identifier. Each of those entries in the user interface can cover multiple flows, so that means a flow isn't just a session between two endpoints, it's just data with some common characteristic, like a common thread identifier. And that piece of it, relying on the user interface, never briefed or argued. If you read that entire passage, Judge Wallach, there is no discussion of figure six of the user interface. In your blue brief, you say if the Board had informed the parties it might construe packet flow entry, you would have addressed that. But didn't you address it in your SIR reply? In our SIR reply, we were focused on Keysight's argument, which was flow log entry. There are some references to packet flow entry, but that wasn't the focus of the parties' dispute. Nobody was calling for it to be construed, and the critical point is… But you said that the red box in 5G was a further consolidation of packet flow entries made up by packet flow entries corresponding to traffic from thread host C and so on. That was really a separate argument, Judge Wallach. And the Board rejected that. And the Board rejected that, it absolutely did. I think it's footnote 16 of its decision, but it did, it rejected that argument. But that's really separate from what we're talking about here. The argument here is what the Board said is if you look at the user interface, the thing that the person ultimately sees in Figure 6, the dashboard, those are packet flow entries, and those you can reason backwards, and those show you what a flow is. And no one had briefed or argued that, and it never came up at the hearing. There's no discussion of the user interface of Figure 6. What you're saying, as I get it, is that the Board should have directly addressed packet flow, that that was the issue. But where does packet flow appear by itself in the 917? Oh, it doesn't. I think we all agree on that. Okay. Why should the Board have considered something that's not in the patent? Because in order to understand the terms that are in the claim, like packet flow analysis data or packet flow entry, you need to understand first what a packet flow is in order to build on that. Now, if the Board had jumped straight to packet flow entry and gotten it right, I guess you could say, well, they never needed to understand the building block in order to understand the building. But the problem was by not starting with the building block and by jumping straight to the second story, they got it wrong. But you say that packet flow, just flow level data, is special, right? Yes. How? What's so different about that data as opposed to other data? What is this night different than? Can I give you an analogy? Because I'm not a computer network security guy, but this is the way I think about it because I'm a sports person. I think about it like baseball because that is something I know pretty well. The packets are like pitches coming across the plate. The flows are the at-bats. They're grouping the pitches by a particular session between the pitcher and the hitter. And as anybody who follows baseball knows, there is a world of difference between a database of just the pitches in a game or a season and the pitches organized by at-bat that you can see by the hitter and over time. It's true for baseball, and it's true for computer network security. But you need the first before you can do the second. You do, but that's the first part of the claim. Everybody agrees that in Claim 1, the first step of our Claim 1 is you generate the packet log data. Everybody's doing that. Source Fire is doing that too. It's that in our Claim 1, there is then an updating part where you are pulling data, the packet flow analysis data, and you are updating these packet flow entries. That's the grouping by at-bat and hitter. And none of that's going on in Source Fire. So if the court had started with packet, the board had started with packet flow and done the claim construction properly, the anticipation or the obvious analysis would have fallen out pretty easily. What specifically then is flow in the context of the patent? So it's exactly what so it is the ordinary meaning of a flow is the data exchanged as part of a given connection or session between two endpoints. And the board accepted, Judge Wallach, at page 16 of the appendix that that was the ordinary meaning. We had testimony on that. It's at page 7294 of the appendix from an expert. It wasn't disputed. No one disagreed with it. So it wasn't like the board said, oh, this isn't the ordinary meaning. You've done your own lexography. What the board did was it said, okay, look, maybe that's the ordinary meaning. But we think if we look at packet flow entry, we can see that you must be using flow in a different way. And by jumping to packet flow entry on the basis of ordinary meaning. But how does that, you say that renders packet flow entirely meaningless. No, I don't think it renders packet flow meaningless. I was agreeing with you. Packet flow is not a separate term in the claims. But in your opening brief, you say, I'm quoting, the board's construction of packet flow entry renders the term packet flow analysis data entirely meaningless. Well, yes, if you understand that in context, which is to say, if you think that this patent is no different from source fire. Source fire is just packet log data. It's just the pitches. It's just every packet coming across the network. But I have a real problem with your brief on that point. Where do you squarely engage with the term? I'm sorry, which term, Judge Wallach? The term packet flow analysis data is entirely meaningless. And the term packet flow entry rendering that. I thought you never engaged with it squarely. I'm sorry if we weren't clear there, Judge Wallach, but here's what we were trying to say, which is source fire has this packet log data, just the packet information. And then the user can query that. If that's all the 917 patent is in the eyes of the board, then that updating limitation in claim one where you take the packet flow analysis data and you use it to update packet flow entries, it essentially is read out of the packet. Because whatever that's doing, and we can debate whatever it's doing, there's no longer any role for it. Because if all we're doing in the eyes of the board is what source fire does, packet log data, and then user can query, you can pull the pitches, you can ask particular questions about what those pitches are, then all of that stuff in our patent about packet flow analysis data and packet flow entry, it can't be doing any work. It can't mean anything anymore. Because all you needed was a packet log data and a user interface that allows them to query it. And everything in between doesn't mean anything anymore. And I'm sorry if we didn't make that clear in the brief, but that's what we were trying to get at. I'm not going to hog you anymore. I like the dialogue. I think this has been exactly what I wanted to say. I mean, I think my point is just if you read claim one, you see the packet log data and you see the user interface at the end. But if all we're talking about is just a database of packet log data that the user can play around with, all of the stuff in the middle of claim one, the updating limitation, I don't know what it's doing anymore. And I think the board missed that because it started in the wrong place. I don't ultimately need you to agree with those arguments, though, because under axonics, all I need you to say is the board rested this on something, figure six in the spec and the user interface, that nobody ever briefed and wasn't even argued at the hearing. And so just send it back to the board, and we can have these arguments in front of the board, and then if we need to, we'll come back up to this court. I think that's the. Let's put aside that procedural argument for just a second. What is your response to on the merits what the board said about 5G and 6G? If I understand your baseball analogy, and hopefully baseball season is just around the corner, it looks like multiple batters and their at-bats are being listed in 5G and 6G. If I understand that correctly, how do you reconcile that with your reading? So the board got 5G right. The board said, look, Keysight's saying this is about flow log entries, flow logs not in claim one, and so we're not going to focus on that. The problem was then it jumped to figure six, which is user interface. Those are not the packet flow entries. If you look at claim one, it says take the packet flow data, pull the packet flow analysis data out of the log data, use it to update the packet flow entries, then cause that to be displayed to the user in an interface. The packet flow entries are separate from and before you start displaying to the user in the interface. Implicit in what you're saying, if I'm following, is if one read, say, 6G as packet flow entries, then you must be wrong about what packet flow entries and packet flows are. No, we would lose on claim construction then, but we would still have the arguments on obviousness that there are elements of this patent that are not disclosed by source FHIR because you've still got the time data, which is important in both cases, right? You can't use the time data in source FHIR the way that you can use the time data in the way this claim requires. You still have the fact that you're not the packet filtering device isn't updating the packet log entries. It all has to be done by the user in source FHIR. So I think you're right, Jeff Stark. If you thought the board got the, oh, those are packet flow entries, even though not even Keysight argued that below, I think they would acknowledge that. They've grabbed onto it now, but they didn't argue it below. I think we'd be wrong on claim construction, but we still ought to win on obviousness because there are at least two big things, right? There's the time data, and there's the fact that this is a system that is updating itself using the packet filtering device, and source FHIR, it's all user queries. There's no sort of system updating going on. And I think we can all agree there's a world of difference between a system where you, the user, have to go try to filter the data to try to find the threats, and the system is itself trying to detect the threats and updating the network security rules. But source FHIR can be used in a fashion that does update on its own. Well, you can query it in order to get the data by a common threat identifier. So the user can query it to create the kind of entries or data that Judge Stark was talking about. So in that one way, you're right, Judge Wallach, you can use source FHIR in that way. It has other problems, right, which is the user has to do the querying. The time data is a real problem. And then that's setting aside the dependent claims that have things like time ranges, which aren't even possible in source FHIR, right, because it's just time for each particular packet. You can't create a range. And then, of course, we obviously have the cross appeal because there are the additional elements on 4 and 14. So there are additional problems, but you'd be right. The user can use source FHIR to create one particular kind of data. It's just that that alone is not enough for them on obviousness. Okay, thank you. Thank you. Good morning, Your Honors. May it please the Court, Gerard Donovan on behalf of Keysight. Centripetal's appeal comes down to what the 917 patent actually says, what source FHIR actually discloses, and what the Board actually found and why. When you consider the actual record, you end up exactly where the Board did, and Centripetal wants a do-over on appeal, and the controlling standard review provides no path to reversal. Starting with the 917 patent, Centripetal bases its arguments on a construction of packet flow that's contrary to what the patent discloses and doesn't address the specific claim elements at issue. The Board rejected Centripetal's proposed construction because it can't be squared with the patent. And what say you to the process arguments your friend just raised? The APA argues that it wasn't raised initially. It was raised repeatedly throughout the process. In Centripetal's initial response before the Board, it argued for a construction of packet flow entry, but then it incorporated that argument regarding the construction of packet flow entry into its construction of packet, sorry, it argued for a construction of packet flow, but then it incorporated that construction into its interpretation of packet flow entry to compare it to the source FHIR reference. And that was at appendix page two, I'm sorry, 7245. 7245. 7245 in Centripetal's response before the Board. And you put forward no claim construction, but is that a fair interpretation to say because you didn't think there needed to be endpoints? So it didn't have this limitation? Our position was construction wasn't required because source FHIR meets the claims even under that construction, but also the Board needed to resolve the claim construction dispute to the extent necessary to resolve the dispute between the parties. And the reference itself, sorry, the patent itself, the 917 patent, teaches that both the flow log entries are updated based on log entries that's expressed in the specification. And it explains within the claim that the flow log entry is, where in each packet flow entry consolidates a plurality of packet log entries corresponding to a common thread identifier. And because that's expressed in the claim, that means that it's not consolidating packet flow, any other information. So what packet flow might mean or flow might mean outside of the context of the claims isn't the issue here. The claims don't recite packet flow standing alone. And the specification, as you mentioned, never recites a packet flow. Instead, we're analyzing what packet flow entry and packet flow analysis data mean in the context of the claims. And on that front, the claims are expressed. It's also consistent with the specification, which what, to go to the baseball analogy, what the specification discloses is analyzing specific, analyzing and logging specific packets as they come in. So you create log entries for each packet, and there's information with that, such as the thread ID and the time for each packet. It then takes the packets related to common thread IDs, and it uses that information to generate these flow log entries. And then it later, and the flow log entries are based on thread ID, but those consolidate packets across communication sessions, across different endpoints. And when those packet flow log entries are updated, they're then updated to reflect additional packets, independent of the connection or the endpoints, just based on the thread ID. That's the same information that's then later used to update the interface. And this is in the patent on Appendix 92, the bottom of Column 15, where at Step 67, it's referring to updating the flow log entry based on the packet log information. And then at Step 68, it's using that information to update the interface. So when the claims are read in the context of the specification, it's clear what packet flow entry means in the context of the patent. Just before you sit down, I have a couple of questions for you about your cross-appeal. Yes. Before you get to it, could you just touch briefly on the second portion of Mr. Wall's argument, which is even accepting the claim construction of the board, there still was no substantial evidence to support the obviousness. Yes. Whether you accept the claim construction of the board or not, I would say even under Mr. Wall's construction, what the board's fact-finding was was that SourceFire discloses logging individual packets and information associated with those packets, and then consolidating that information into flow log entries. And this is disclosed in SourceFire by disclosing, first, you can see in the log where you have the packets, the rule with the rule ID that identifies the threat that's corresponding to it, the various timing data for the packets, the IP address that it comes from and to, and then it generates the packet flow entry, which is going to be a consolidated view of that. It has the counts of packets that correspond to the different threats. And this is in – that's in Pages, Appendix 953 and 954. And that count in 954 is showing the packet flow entry, as the board found, because that's consolidating the packets from the packet log that are associated with the threat. And so whether we adopt – under the board's construction, it's just straightforward that that's meeting the packet flow entry requirement. But even under Centripetal's construction, that would require that the packet flows be connections between endpoints. The board's findings still establishes that that packet flow entry is consolidating packet flows between endpoints into the packet flow entry, because the nature of packet communications, every one of these logs – sorry, log entries is a packet that's within a communication session. And so the entire session will be logged in this process, and that will all be incorporated into this count that's updated. Does that answer your question? And I'm sorry, just to touch on one related point from Council, to just complete the baseball analogy. It's going right from pitches to the final product. There is no at-bat type of data here. The patent discloses only the concept of it being inconvenient to review logs, and so you want to consolidate logs into these flow log and packet flow entries to make it easier to review the data. Also, on the refresh point, Council said that SourceFire only refreshes when there's a user selection, and that's not correct, and the board found otherwise. It's true that to navigate to a screen, a user needs to select where they navigate, but when you configure a refresh interval, then it will refresh according to that refresh interval. And in order for it to update a packet flow entry, there needs to be additional packets that come in and cause that refresh to update the entry. So if you have a one-minute refresh and no additional packets come in associated with a specific threat, there won't be an update or a modification of that entry because you don't have additional packets coming in. But if you have five more packets coming in corresponding to threat one, then at that refresh, the system will automatically refresh that entry to show the additional five packets. So you have the system performing the refresh, not the user doing it. I have one more on the appeals. Yeah, sure. I just didn't want to lose it. Yeah, got it. And you've sort of touched on it, and there may not be more to say, but they argue, for instance, at the blue brief at page 59, that you've not addressed Centripetal's argument that the device itself had to update the packet flow entry, and you've never suggested that the limitation could be satisfied by a user entering manual queries in the interface. Could you just address those arguments? Sure. And so our petition put forward that the refresh interval shows the device performing the update. And so whether a user needs to configure whether there's a refresh interval is orthogonal to the issue of whether or not the device itself is doing the update. So I think they're correct that a user can configure what the refresh interval is. SourceFire also disclosed that a user can pause the window so that you don't see the refreshes anymore. But the petition explained that it's the refresh itself, which is the device performing the update. And when you go to one of these screens in SourceFire, you will see it refresh, and the system will be, the SourceFire IDS, will be performing the analysis, updating the packet flow entry, causing that to be displayed, and you will see the updated display based on the refresh interval. And that's because the system is detecting the packets that trigger the rules, logging those, creating the flow entry, the consolidated entry with the count, and then causing that to be displayed. Thank you. Sure. In your cross-pill opening brief, the red brief, you argue that drill-down pages are populated with a subset of columns available in the database. Thus an existing column in the database includes the count, and therefore the packet flow log entry that is used to update the packet flow entry in the interface. Did you argue that specific point, that drill-down pages point about containing a subset of columns that are available in the database before the board? We did. I couldn't find that. I believe it was in Petitioner's reply. Thank you. I'm not seeing that specifically in her reply. I'll look further and see if I can find specifically it. I will say that the board's finding, I think even absent the database disclosure, which SourceFire clearly includes, the board's finding did recognize in its final written decision that SourceFire discloses updating the packet flow log entry in response to additional packets satisfying the rules, and this was in the board's decision at? I know they did. Okay, Appendix 30. And I'll say that I think under the correct construction of responsive to, even without the underlying database disclosure, SourceFire still meets that, because what you see in the user interface, and this was in the petition itself, is that there is the entry, and in order to update or modify that entry, you have to modify the data that provides that entry. So even without the database disclosure, you still get to SourceFire disclosing what's required by Claims 4 and 14. And there was no official claim construction, right? So where in the board do you come up with a claim construction for responsive to? So the board's decision distinguished between the based on language in Claim 1 and the responsive to language in Claims 4 and 14 by asserting that responsive to required something else in Claims 4 and 14 and finding that Centribetal's arguments that you get to it from either a user triggering it or the refresh interval, that that wasn't responsive to the packet coming in. And that construction, or that implicit construction, is saying that it must be solely or exclusively responsive to the packet because you won't have an update to the count unless additional packets trigger the rule. And so by finding that having to have a refresh interval was not enough, that was implicitly construing to say having a refresh interval as well is required. And this court has held that the plain meaning of responsive to does not exclude additional steps. This was addressed recently in this board's decision in the Centribetal v. Palo Alto case. Even if we accept your argument, is a remand not necessary? Yeah, that was my question. I think it depends. If there's a factual question about the database disclosure or the evidence that needs to be resolved by the board, then a remand would be necessary. But what's your best argument? I think the argument is that the board's own finding in context of the independent claims, that SourceFire discloses updating the sentry based on the additional packets coming in establishes under the correct construction that the claims are invalid. The other part of this Claims 4 and 14 is that this data must indicate whether the packets are allowed or blocked, and it must indicate the rule that goes with them. And again, the board's independent claim analysis, looking at another interface, but an interface that shows the same information, found that the left-hand column in SourceFire that has the arrows indicating whether or not you dropped it, indicates this information whether the packets are allowed or dropped. And the central column that has the message, which includes the rule, indicates the rule. And the data itself that's updating the count, by updating that count, you are indicating which packets are allowed or blocked based on that. So if a packet goes from 30 to 31 for a row that is blocked, associated with rule and threat 1, then updating that 30 to 31 indicates both whether it was blocked or allowed in the rule. And with that, I'll reserve the rest of my time. Thank you. Okay, you're in the fourth quarter on the 10-yard line. So I'm going to have three quick running plays, and we'll see if I score. So the first is on claim construction. On the procedural point, counsel points to page 7245 of the appendix. That's the section of our response where you were talking about packet flow. We refer at one point to packet flow entry, and we just define the language from the patent that's packet flow entry. The idea that that sort of made this all about packet flow entry isn't right, but in any event, it's not the critical point. The critical point is it's not what the board said. The board turned to figure 6 in the user interface, said that's the packet flow entry, and that tells you what the packet's about. And figure 6 was never on the table, not in the briefs, not at the hearing. There is no mention of it. And Axonic says that's not fair or right under the APA. We ought to be able to go back to the board and address that, so it's a simple remand. On the obviousness analysis, I think there are three elements of the claim that aren't tracked, but the easiest one to see is the time data. There is no way to manipulate or play with time data for multiple packets in SourceFire. You can't do it. And the easiest way to see that is for some of the dependent claims 3 and 13. They have a time range. You cannot generate the time range in SourceFire. So I think that alone gives them a problem on obviousness. On the cross-appeal, I think they're really overcomplicating what the board did. The board didn't do claim construction. It said, okay, responsive to, what is this in response to? Well, if the user doesn't click anything and doesn't set a refresh interval, nothing happens. This packet requires that the updating occur responsive to a determination by the packet filtering device. And the board said, not as a matter of claim structure, but as a matter of fact, that is not in fact what happens with SourceFire. This packet requires that the packet filtering device make a determination that causes the updating, and that doesn't happen in SourceFire. And I don't think anybody disputes as a matter of fact that doesn't happen in SourceFire. The board also correctly said at page 38 of the appendix, and those claims 4 and 14 require existing packet flow log entries, and there are no existing entries in SourceFire because there's nothing until the user himself clicks or sets a refresh interval based on some parameters and then creates the entries him or herself using the SourceFire system. There's nothing existing, and the updating isn't being done responsive to a determination by the packet filtering device. I think the board got that all completely right. And so whatever the court does with respect to the main appeal, though we'd urge the court send it back to the board, it ought to affirm with respect to claims 4 and 14. Thank you. Thank you. All right, we'll restore two minutes for your rebuttal time, only on the cross-field. Yes, so just for claims 4 and 14, I just want to make the point that under the proper construction of these claims, I think the board's findings themselves show that what SourceFire is disclosing is refreshing the entry that's shown on screen. When additional packets satisfy the rules, the refresh interval takes you to that, even if a user must navigate to the screen, and that's what causes it to be displayed in the first instance. Once the user does, you have that number on screen, and that number will update. The system will cause that number to be updated based on the additional packets satisfying the rules. That will cause this entire process of the system on its own will be logging the packets, the associated thread IDs, consolidating that information. And then when that's being displayed by the user, it will be updated if there's a refresh interval or it's not paused based on the additional packets. And so the SourceFire itself discloses that. The board found that in the context of the independent claims. When properly construed, that supports reversal on claims 4 and 14. Thank you. Thank you. That's the case.